# Wilson v. Commonwealth.

April 19, 1949.

Leonard S. Stephens for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant charged with shooting and wounding Rebecca Watson with intent to kill her, was found guilty, the jury returning a verdict fixing punishment at two years' imprisonment. On appeal only one question is presented, did the court erroneously exclude from the jury competent evidence offered on behalf of defendant? The answer requires a brief review of the evidence.

The shooting and wounding grew out of ill feeling which arose between the main actors and their families. Two days before the shooting the 14 year old daughter of appellant disappeared from her home, not far from the

home of the Watson family. A search was instituted for the girl, appellant's wife going to the Watson home where she was told that the girl was not there, though it developed later that this information was not true. The record shows very clearly that Wilson and his wife were much disturbed and aggravated by the fact that the young girl, as they believed, had been harbored in the Watson home, and it is shown that Mrs. Watson's reputation for morality was bad. Appellant and his wife continued the search for the girl and later located her at the home of her grandfather nearby. The girl told them she was at the Watson home when they came there on the previous Saturday, and that she had spent some time in the woods with a young man who lived in the Watson home.

On the day of the shooting Mrs. Watson, and other members of her family were in a truck going towards their home; when near the home the truck was stopped for some purpose and appellant and his wife came up riding in a "jeep" and stopped near the Watson home. Mrs. Watson got out and went toward the Wilson vehicle. What then occurred may be told in the words of Mrs. Watson and appellant. Asked to tell what occurred Mrs. Watson said that Mrs. Wilson asked: "Becky, I want to know what made you tell them lies the other day about having Marilyn locked up in your home. I said I didn't Lula. I said you did too, she told me all about it. We was walking back, and I was going toward home; she was going back and got in the jeep. George said something and he come out with his hand in his pocket, like this (indicating left hand) and said 'did you accuse me of lying?' and I said 'no, George I haven't said anything.' I started up toward the house and they both started towards me. There was an old axe laying there and I picked it up, and when I raised up and looked toward George he was pulling his gun; I dropped the axe and started to run, and said 'don't shoot me' and he shot me. It knocked me down and I fell on my face and breast."

She said that appellant was about 14 feet from her when he fired the one shot which struck her on the right side just below the arm pit; a coat and dress exhibited showed that the shot entered slightly from the back. The witness was confined to the hospital for a week or ten

days as the result of the wound. The evidence of Mrs. Watson was corroborated by several of her children who were with her at the time. Appellants testified as to what happened after some words had passed between his wife and the prosecuting witness. He said: "I got my pistol out of the tool department of the jeep and went around the jeep, and when I got clear of the jeep I hollered at her. She was coming toward my wife with the axe in her hands, over her right shoulder. I shot once when I hollered. I didn't want her to hurt my wife. It looked like something had to be done. I knowed I couldn't get there. I told her not to do that but she never stopped."

Appellant's version of the melee was corroborated by his wife, and to a slight degree by a witness who was nearby the scene. Thus it may be noted the only issue to be determined by the jury was whether or not appellant, who admittedly fired the pistol and wounded Mrs. Watson was acting at the time in defense of his wife, and used no more force than appeared to him to be necessary to protect his wife. This was a question solely for the jury, and we note that on this phase of the case the court gave a correct and unchalenged instruction.

The argument in brief is that the court erred to the prejudice of appellant in respect to rulings on admission or rejection of testimony. When appellant was on the stand he was asked, "Did you ever say anything to her except 'don't do that' when you saw her going toward your wife with the axe drawn?" Objection was made, but before the court could rule appellant answered: "No sir." The court concluded the question was leading and withdrew the question and answer from consideration by the jury. This question was, of course, leading, but from examination of appellant's testimony it appears that he had gone into minute detail in telling all that was said by him. At one point he was asked: "Did you say anything to her?" and he said "not at that time." Later he said "I hollered and told her not to do that." About the only thing the witness had said in relation to words spoken by appellant was that "George had asked her did she accuse him of lying," to which she answered, "No, I haven't said nothing to you," and he was not asked about this. We are unable to conclude that the court's ruling in the respect complained about served to work any prejudice, since the sole question was

whether or not appellant satisfactorily established his claim of defense of his wife.

Appellant also complains that when Mrs. Watson was under cross examination she was asked, referring to the daughter, "You told Mrs. Wilson that she was not there when she came up and inquired about her?" The court sustained Commonwealth's objection, but notwithstanding, after the court had ruled, the question was asked: "Did you tell Mr. and Mrs. Wilson their daughter was not there at the house?" and she replied "No, sir I did not." To this question and answer there was neither objection nor exception, but had there been we could not hold prejudicial error. We repeat, the only issue under all the facts was whether appellant convinced the jury that he should be excused on the ground of defense of his wife.

A survey of the record discloses that appellant was afforded a fair trial, hence the judgment must be and is affirmed.